Robert Darrell HIGHTOWER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-82-490.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1983.
As Corrected Jan. 31, 1984.

Joe Farnan, Purcell, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

Robert Darrell Hightower was given two ten (10) year terms of imprisonment and fines of twenty-five thousand ($25,000) and

five thousand dollars ($5,000) for unlawful cultivation of marijuana and unlawful possession of marijuana with intent to distribute. On appeal, he asserts some ten propositions of error, only one of which need be addressed in this proceeding.

Under his third proposition of error, appellant contends that evidence obtained pursuant to a search warrant should have been suppressed since the warrant was not served by an officer directed in the warrant. Under 22 O.S.1981, § 1227,

[a] search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer, on his requiring it, he being present, and acting in its execution.

The search warrant in the case at bar was directed to "any Sheriff, Constable, Marshal or Policeman in the County of Pottawatomie." Compare 22 O.S.1981, § 1226 ("The warrant must be in substantially the following form: .[T]o any sheriff, policeman or law enforcement officer in the County of ———— . . . .").

The record reflects that the warrant was served at a location in Pottawatomie County by agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs and troopers of the Oklahoma Highway Patrol, assisted by municipal police officers from Cleveland and Oklahoma Counties. In *Kay v. State,* 668 P.2d 1150 (Okl.Cr.1983), this Court stated:

First, the appellant maintains that the search warrant did not have a directive which would specifically include highway patrolmen, therefor Patrolman Rogers could not serve the warrant. That warrant contains the following directive:

To the Sheriff of Muskogee County or any Police Officer in the State of Oklahoma.

\* \* \* \* \* \*

Title 74 O.S.1981, § 149 authorizes officers of the State Highway Patrol to exercise the power of search and seizure. However, this Court interpreted that section, which has remained unchanged since its enactment in 1939, in *Mitchell v. State,* 74 Okl.Cr. 416, 127 P.2d 211 (1942). In *Mitchell,* the search warrant read as follows:

To any sheriff, constable, marshal or policeman in the County of Pontotoc, and any peace officer in Pontotoc County, Oklahoma, Greeting:

Three investigators for the Department of Public Safety served the search warrant in *Mitchell.* As stated in *Mitchell*:

[T]his Court intends to give full effect to the legislative enactment conferring the right of search and seizure on state investigators and highway patrolmen in certain instances, but it will not by inference extend the right of an investigator or patrolman to make such search and seizure where the warrant is not specifically directed to them.

*Id.,* at 213.

[T]he search warrant in the instant case was not specifically directed to any highway patrolmen. Therefore, Patrolman Rogers did not have the authority to serve the warrant.

668 P.2d at 1151–1152.

The only significant difference between the warrants in *Kay* and the case at bar is that, in the present case, the warrant could also be served by a "Constable" or "Marshal". Since neither appellation reasonably encompasses a highway patrolman, the troopers could not properly serve the warrant under 22 O.S.1981, § 1227.

Agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs are peace officers, and have the power to serve search warrants, 63 O.S.1981, §§ 2–103(B) and 2–501. However, no justification appears for distinguishing them from the trooper in *Kay* and the state investigators in *Mitchell* in terms of their ability to serve warrants not specifically directed to them. The State does not appear to argue that the municipal policemen from Cleveland and Oklahoma counties had any independent authority to serve the warrant outside their counties.

The State's suggestion that the officers' good faith prevents application of the

exclusionary rule supposes the officers' ignorance of the law. Formulations of the so-called "good faith" exception to the exclusionary rule do not include within their scope actions in ignorance of established law. See, e.g., *United States v. Williams,* 622 F.2d 830, 841 (5th Cir.1980), cert. den., 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114, Note 4a (the officers' good faith belief must be based on articulable premises sufficient to cause a reasonable, and reasonably trained, officer to believe he was acting lawfully; the officer's unawareness of constitutional requirements would not suffice). Assuming arguendo that a good faith exception should be recognized, it would not be applicable in the case at bar.

█ However, the invalidity of the search does not avail appellant in the absence of a showing that he had a reasonable expectation of privacy in the areas searched, *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Edwards v. State,* 651 P.2d 1335 (Okl.Cr.1982); or that he was the owner or occupant of the premises searched. *Sanders v. State,* 351 P.2d 1079 (Okl.Cr.1960). In this case, the transcript of the preliminary hearing, which formed the basis for the ruling on the motion to suppress, reflects that the premises searched was a thirty acre tract of land.

█ The search was conducted beginning sometime between 5:00 and 6:00 p.m. on the afternoon of October 20, 1980. At that time, a gate guarding a drive leading to a mobile home on the land was padlocked. The officers cut through the gate and searched the mobile home and a locked semi-trailer some eighty yards to the northwest. Two fields of marijuana one hundred yards west of the mobile home, and screened from view by foilage, were also discovered. Several vehicles were searched.

No evidence was presented as to who owned the land and structures in question, or who had the legal right of possession. It was shown that appellant entered the property at about 10:30 a.m. on the day of the search, and that the vehicle he was driving was still near the mobile home at the time of the search. The only person on the land at the time of the search was a co-defendant who exited the mobile home. While the search was in progress, appellant and a second co-defendant approached the gate by means of a public road fronting the property, but then rapidly drove away. They were apprehended and returned to the scene of the search.

It is clear that as to the bulk of the premises searched, appellant has not shown that his personal rights were violated. However, it was established that one of the vehicles searched, a black Cadillac, was owned by appellant. The keys were taken from him at the scene, and a small quantity of marijuana, some 2.3 grams, was found in the trunk of the car. As to this evidence, appellant's personal rights were clearly violated, and it should have been suppressed.

█ The introduction of the marijuana seized from the trunk of appellant's car cannot be characterized as harmless. Most of the other evidence against appellant depended upon the inferences to be drawn from items of proof. The undisputed evidence of marijuana in appellant's possession in his personal vehicle may well have colored the jury's perception of the other evidence in the case. Accordingly, this cause must be REVERSED and REMANDED for a new trial.

BRETT, J., concurs.

BUSSEY, P.J., specially concurs.

BUSSEY, Presiding Judge, specially concurring:

I agree that the seizure of the marijuana from the automobile owned by the appellant should have been suppressed, and that the erroneous admission of this evidence requires reversal and remand for a new trial. I do not find, however, that the admission of the other marijuana was error in view of the appellant's failure to demonstrate a reasonable expectation of privacy.